UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JACK W. HARANG, APLC                                CIVIL ACTION

v.                                                  NO. 13-2454

DANIEL V. ALFARO                                    SECTION "F"

ORDER AND REASONS

Before the Court is Daniel V. Alfaro's motion to dismiss for lack of personal jurisdiction, improper venue, or defective service of process.  For the reasons that follow, the motion to dismiss is GRANTED.

**Background**

This lawsuit arises from the conversion of legal fees in the personal injury case of <u>Samuel Gonzalez, et al. V. Verde 5700 International Parkway, L. P., et al</u>, 206th judicial District Court Cause No. C-3779-10-D, Hidalgo County, Texas.

In the early spring of 2011, Daniel V. Alfaro, a lawyer in Texas, called Jack W. Harang, a lawyer in Louisiana to ask for his assistance in the Gonzalez case. Alfaro, Harang, and Newton B. Schwartz, Sr., another Texas attorney, executed a contingency fee contract with their client, Samuel Gonzalez. On June 27, 2011, Harang applied for admission pro hac vice in Texas to appear in this case.  In the spring of 2013, the Gonzalez case settled for an amount that generated a total fee of approximately $294,000.00.

Samuel and Veronica Gonzalez authorized Alfaro to distribute the settlement funds in the underlying case. However, Alfaro sent Harang's portion of the attorneys' fees to Schwartz.

On April 24, 2013, Harang sued Alfaro in this Court, alleging conversion and breach of fiduciary duty. Harang submits that Alfaro failed to properly distribute Harang's portion of the attorneys' fees, which was approximately $98,000.00.

Alfaro now seeks dismissal based on lack of personal jurisdiction, improper venue, or defective service of process.

## I.
### A.

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the Court's exercise of personal jurisdiction over it.

When a nonresident defendant like Alfaro seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over the defendant, but need only make a prima facie case if the Court rules without an evidentiary hearing. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008); see also Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir.), cert. denied, 548 U.S. 904 (2006). The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. Wilson v. Belin, 20 F.3d 644, 648

(5th Cir. 1994); see Jobe v. ATR Mktg., Inc., 87 F.3d 751, 752 (5th Cir. 1996).  "In determining whether a prima facie case exists, this Court must accept as true [the plaintiffs'] uncontroverted allegations, and resolve in [their] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation."  Pervasive Software, Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 219-20 (5th Cir.  2012)(quoting Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004)(alterations in original)(quotation omitted)).

*B.*

The  Court  may  exercise  personal  jurisdiction  over  a nonresident defendant only if two requirements are satisfied:  (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction comports with Due Process.  See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).  Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the two-part inquiry merges into one:  whether this Court's exercise of jurisdiction over the defendants would offend due process.  See La. R.S. 13:3201(B)(providing that a Louisiana court "may exercise personal jurisdiction over a nonresident on any basis consistent with . . . the Constitution of the United States"); Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

3

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994)(The Due Process Clause limits the Court's power to assert personal jurisdiction over a nonresident defendant.).  To conclude that the exercise of personal jurisdiction comports with Due Process it must be shown that (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado, 615 F.3d 364, 367 (5th Cir. 2010)(citations omitted). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state. McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S.Ct. 68 (2010).

The minimum contacts inquiry takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court is asked to exercise general or

4

specific jurisdiction over the defendant. Choice Healthcare, Inc., 615 F.3d at 368 ("The 'minimum contacts' prong of the two-part test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction."). Regardless of whether the lawsuit is related to the defendant's contacts with the forum, courts may exercise general jurisdiction over any lawsuit brought against a defendant that has substantial, continuous, and systematic general contacts with the forum state. See Seiferth, 472 F.3d at 271 (citing Helicopteros Nactionales 466 at 413-14); Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007)("Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."). "If", on the other hand, "a defendant has relatively few contacts, a court may still exercise specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" Id. General jurisdiction focuses on incidents of continuous activity within the disputed forum; specific jurisdiction is more constrained by virtue of a very limited nexus with the forum.

If a plaintiff demonstrates minimum contacts between the defendant and the forum state, then the Court may exercise personal jurisdiction unless the defendant makes a "compelling case" that the exercise of jurisdiction is unfair or unreasonable. Burger King Corp. V. Rudzewicz, 471 U.S. 462, 477 (1985); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). In determining

whether the exercise of jurisdiction is fair and reasonable, the Court considers certain fairness factors: (1) the burden on the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. See <u>Nuovo Pignone v. Storman Asia M/V</u>, 310 F.3d 374, 382 (5th Cir. 2002)(citation omitted).

The defendant submits that the record establishes that he lacks sufficient contacts with Louisiana for the Court to assert personal jurisdiction over him.

II.
*A.*

The Court considers the plaintiff's contention that juridical factors support the exercise of specific jurisdiction over the defendant.[1] "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851 (2011).  The Fifth Circuit has articulated a three-step specific personal jurisdiction inquiry:

> (1)  Did the plaintiff's cause of action arise

---

[1] The plaintiff is not contending that the Court may exercise general jurisdiction over the defendant.

>    out of or result from the defendant's
>    forum-related contacts?
>
> (2) Did the defendant purposefully direct its
>     activities toward the forum state or
>     purposefully avail itself of the
>     privilege of conducting activities
>     therein; and
>
> (3) Would the exercise of personal
>     jurisdiction over the defendant be
>     reasonable and fair?

Pervasive Software, Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 227 (5th Cir. 2012).[2] "[T]he defendant's contacts [with the forum] must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person,'"; however, the Fifth Circuit observes that, unlike general jurisdiction, "specific jurisdiction may exist where there are only isolated or sporadic contacts' ...so long as the plaintiff's claim relates to or arises out of those contacts." ITL, Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498-99 (5th Cir. 2012)(citations omitted).

Specific personal jurisdiction is claim-specific; that is, if a plaintiff's claims relate to different forum contacts of the defendant, then specific jurisdiction must be established for each claim. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274-75 (5th Cir. 2006); McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S.Ct. 68 (2010).

---

[2] If the plaintiff establishes (1) and (2), then the burden shifts to the defendant, who must show that it would be unfair or unreasonable to exercise jurisdiction. Id.

7

It is well settled that a single act directed toward a forum state that gives rise to a cause of action can support a finding of minimum contacts as long as the defendant reasonably anticipates being haled into a court in the forum state. ICEE Distributors Inc. V. J&J Snack Foods Corp., 325 F.3d 586, 591 (5th Cir. 2003) (citing Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 871 (5th Cir. 2000)). In addition, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." Wien Air Alaska, Inc, 195 F.3d at 213.

For example, if a defendant makes false statements during a phone call to the forum, the purposeful availment inquiry is satisfied. See Lewis v. Fresne, 252 F.3d 352, 359 (5th Cir. 2001). In Lewis, a defendant testified that his partner, Rosenfeld, had failed to correct allegedly false statements made during a phone call to the plaintiff. Id. at 358. The Fifth Circuit reversed the district court's dismissal for lack of personal jurisdiction finding that the defendant purposefully availed himself to the forum state. Id. at 359. The Fifth circuit reasoned that the 'actual content' of the communications between Rosenfeld and the plaintiff showed a purposeful availment of the benefits and protections of the forum state since it gave rise to an intentional tort. Id. (quoting Wien Air Alaska, Inc, 195 F.3d at 213).

*B.*

Harang alleges that Alfaro converted legal fees owed to Harang by transferring Harang's share of the attorneys' fees from the Gonzalez case to Schwartz, the attorney involved in the underlying case. Harang alleges that the Court has personal jurisdiction over Alfaro because Alfaro has transacted business in this District, and this claim arises out of his contacts and business in this District. The Court disagrees. The three-step specific personal jurisdiction inquiry articulated by the Fifth Circuit illustrates that this Court lacks jurisdiction over Alfaro.

Harang brings conversion and breach of fiduciary duty claims based on not getting compensated for working on the Gonzalez case. These claims do not directly arise out of Alfaro's contacts with Louisiana. In the early spring of 2011, Alfaro contacted Harang, who apparently was in his Louisiana law office. In his affidavit, Harang claims that Alfaro asked if Harang would be interested in assisting Alfaro and Schwartz in the Gonzalez case in Texas. The contingency fee contract, which forms the basis of the conversion and breach of fiduciary duty claims, was executed later, after Harang's discussions and review of the case. This initial contact ultimately led to an agreement to share fees and work on a case, but did not itself establish the contractual duties that Alfaro allegedly breached. The purposeful availment inquiry further supports this finding that Alfaro did not have sufficient contacts

9

to establish specific jurisdiction.

In Lewis, the Fifth Circuit highlighted that a single phone call can satisfy the purposeful availment inquiry as long as the 'actual content' of the communications gives rise to intentional tort causes of action. 252 F.3d at 359. The 'actual content' of Alfaro's initial phone call to Harang in Louisiana, as discussed above, merely involved Alfaro asking for Harang for his assistance. No intentional tort is alleged to have been committed during this phone call. Unlike Lewis, where the claims specifically arose out of the content of the defendant's phone call, the basis for Alfaro's alleged conversion and fiduciary duty occurred after the initial phone conversation. Harang's claims are based on a contingency fee contract, which suggests that the money at issue was not available at the time of the initial phone contact. After all, Harang's claims are based on what Alfaro did with the fee, not Alfaro's conduct in asking for help on the underlying case. Harang has not shown that Alfaro purposefully directed his conduct, in failing to remit Harang's fee, toward Louisiana.

In his opposition, Harang contends that Alfaro knew that the plaintiff was a Louisiana Professional Law Corporation and, therefore, Alfaro knew that his actions in converting the funds would cause harm in the State of Louisiana. But, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction." Mullins v. TestAmerica, Inc., 564

F.3d 386, 401 (5th Cir. 2009) (citing <u>Revell v. Lidov</u>, 317 F.3d 467, 473 (5th Cir. 2002). Specific jurisdiction requires specific acts toward the forum and foreseeable injury alone is not sufficient. <u>See</u> <u>e.g.</u>, <u>Wien Air Alaska, Inc.</u>, 195 F.3d at 212; <u>Jobe v. ATR Marketing Inc.</u>, 87 F.3d 751, 753-54 (5th Cir. 1996); <u>Southmark Corp. v. Life Investors, Inc.</u>, 851 F.2d 763 (5th Cir. 1988). Where a non-resident defendant acts outside of the forum in a manner that causes injury in the forum, the Court may apply the "effects test." <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984). Under the "effects test," a court may exercise specific jurisdiction over a non-resident who has "expressly aimed" his tortious conduct at the forum state knowing that the injury would be felt there. <u>Id.</u> But the effects test is limited.

Harang's location and suffering of harm in Louisiana cannot independently support personal jurisdiction. Harang's contact with the forum state is not relevant to the purposeful availment inquiry. The fortuity of the plaintiff's residence does not establish that Alfaro purposefully availed himself of the benefits and protections of Louisiana. Harang also submits the medical correspondence for the Gonzalez case, typed on Harang's letterhead, as an example of Alfaro's contacts with the forum state. The correspondence, however, establishes Harang's contacts with Louisiana but not Alfaro's.

Consider <u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773 (5th Cir.

11

1983), cert. denied, 481 U.S. 1015 (1987), in which a Texas oil and gas corporation sued an Oklahoma oil and gas investor to recover its unpaid share of operating expenses for an oil and gas drilling venture. Id. (communication by defendant with plaintiff in forum state in course or contract negotiation and performance motivated by fortuity by plaintiff's location there does not support exercise of specific jurisdiction). The Fifth Circuit has instructed that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Id. at 778. Indeed, in Holt, the Fifth Circuit observed:

> Although the contractual relationship between Holt and Harvey may have been cemented in Texas, the significance of this fact is diminished by the contract provision specifying that Oklahoma law would govern the agreement.... Our conclusion is further bolstered by the fact that performance of the contract was centered in Oklahoma, not Texas.... Finally, the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law. These communications to Texas rested on nothing but 'the mere fortuity that [Holt] happens to be a resident of the forum.

Id. These same circumstances are present here. The contractual relationship may have begun when Alfaro contacted Harang in Louisiana. Nevertheless, the contingency fee contract specifies that Texas law would govern the agreement. Like Holt, performance of the contract was centered in the defendant's state, which in this case was Texas. Thus, the communications to Louisiana rested

on the mere fortuity that Harang happens to be a resident of the forum. The specific jurisdictional inquiry demands focus on the defendant's contacts with the forum, not the plaintiff's.

Ultimately, Alfaro is a Texas attorney, who was working on a Texas case in Texas. The fact that Harang is a Louisiana-licensed attorney, who worked together with two Texas attorneys on a Texas case, does not establish specific jurisdiction over Alfaro in Louisiana. Harang fails to show that Alfaro purposefully availed himself of the benefits and protections of Louisiana; thus, he could not have reasonably anticipated being haled into this Court. Accordingly, the Court lacks specific jurisdiction over Alfaro.[3]

Accordingly, the defendant's motion to dismiss for lack of

---

[3]Harang also contends that Alfaro waived his personal jurisdiction defense by making a general appearance when Alfaro allegedly invoked the jurisdiction of the Court to file a Conditional Motion for Sanctions. (The motion was denied because Alfaro failed to comply with the procedure mandated by Rule 11(c)(2) of the Federal Rules of Civil Procedure.) The Fifth Circuit articulated that the "Federal Rules of Civil Procedure abolished the technical distinction between general and special appearances." Product Promotions, Inc. V. Cousteau, 495 F.2d 483, 490 (5th Cir. 1974) (overruled on other grounds as recognized in Hester Int'l Corp. V. Fed. Republic of Nigeria, 879 F.2d 170, 181 (5th Cir. 1989)). However, "[a]n appearance may ... arise by implication from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceeding recognizing the case as in court." Cactus Pipe & Supply Co., Inc. V. M/V Montmartre, 756 F.2d 1103, 1108 (5th Cir. 1985) (citing 6 C.J.S. Appearances § 18 at 22 (1975)). An appearance may result from the filing of an answer without raising juridical defects. Id. Here, it is clear that Alfaro's motion for sanctions was conditional upon his jurisdictional challenge. Alfaro did not waive his personal jurisdiction defense.

personal jurisdiction is GRANTED and the plaintiff's claims are dismissed.[4]

New Orleans, Louisiana, August 7, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court has determined that it lacks personal jurisdiction over the defendants, it need not reach the defendant's alternative requests that the Court dismiss the plaintiff's claims for improper venue and/or defects in service.